[Southern Railway Co. v. Carter.]

# Southern Railway Co. *v.* Carter.

*Action for Injury to Servant.*

(Decided June 2, 1909.  Rehearing denied Dec. 16, 1909.—51 South. 147.)

1. *Master and Servant; Injury to Servant; Complaint.*—A count which alleges that plaintiff, while in the employment of defendant and in the discharge of his duties, was run over by defendant's engine, resulting in injuries proximately caused by the negligence of a person in defendant's service in charge of the engine but whose name was unknown to plaintiff, and that the negligence consisted in negligently permitting the engine to suddenly start forward, thus causing plaintiff to be thrown down and injured, states a cause of action.

2. *Same; Sudden Start.*—Whether or not the sudden starting of an engine which injured plaintiff was negligent depends on the knowledge of the engineer of the position of the person injured.

3. *Same; Negligence; Burden of Proof.*—Where plaintiff was injured by the sudden starting of the engine, he must carry the burden of showing that the engine was suddenly started, and that the engineer knew or by reasonable care, could have known, that plaintiff was in a position of peril.

4. *Same; Dangerous Place; Knowledge.*—Where the train on which plaintiff was at work had been left on a side track with a work train, and plaintiff under instructions went on the main track to flag an engine which was following for the purpose of hauling plaintiff's train forward, and the engineer in charge of the engine stopped nearly abreast of the work train, and plaintiff turned towards it, and turned to his left side to get on the engine to give the engineer instructions when the latter under instructions from his conductor suddenly moved his engine forward and plaintiff was thrown and injured, this was not sufficient as a matter of law to show that the engineer was charged with notice, that plaintiff was about to board the engine, the engineer having testified that he had received the orders to start, and that he did not see plaintiff until after the accident.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Action by Carl Carter against the Southern Railway Company.  Judgment for plaintiff, and defendant appeals.  Reversed and remanded.

The fifth count is as follows: "Plaintiff claims of the defendant the sum of.$25,000, for that heretofore,

on, to wit, the 23d day of May, 1907, defendant was engaged in the business of running and operating a railroad in the state of Alabama, and particularly in the counties of Jefferson and Walker in said state; that plaintiff was a resident of Jefferson county, Ala., and was on said date in the employment of defendant in the capacity of flagman; that while in the discharge of his said duties as such employe of defendant upon said date, on defendant's railroad in Walker county, Ala., plaintiff was run over, his right leg cut off between the ankle and the knee, and he was otherwise bruised, mashed, mangled, and injured in his head, face, limbs, and body, and suffered great physical and mental pain and anguish, was crippled and disfigured for life, and was rendered permanently less able to work and earn money. Plaintiff avers that said injuries were proximately caused by reason of the negligence of a person in the service or employment of defendant, whose name is unknown to plaintiff, in charge or control of the locomotive engine upon defendant's railway; that said negligence consisted in this: Plaintiff, in discharge of his duties as defendant's employe, signaled with his flag for said engine to stop; that said engineer in obedience to said signal stopped said engine; that while plaintiff, in discharge of his duties as aforesaid, was engaged in and about boarding said engine, said engineer negligently permitted, caused, or allowed said engine to suddenly start forward, so that, as a proximate result of said sudden starting of said engine, plaintiff was thrown down and injured as aforesaid, all to plaintiff's damage," etc.

Demurrers were interposed to this count because (1) it fails to state a substantial cause of action; (2) it fails to aver or show that the injuries complained of were a proximate result of the negligence alleged.

[Southern Railway Co. v. Carter.]

WEATHERLY & STOKELY, for appellant.—Count 5 fails to state a cause of action and demurrers should have been sustained to it.—*Bir. R. L . & P. Co. v. Parker*, 47 South. 138; *Mobile L. & R. Co. v. Bell*, 45 South. 56; *Southern Ry. Co. v. Forrester*, 48 South. 69; *Ala. C. C. & I. Co. v. Hammond*, 47 South. 248; *Charlie's T. Co. v. Malone*, 48 South. 705; *L. & N. v. Vanzant*, 48 South. 389. The court should have given the affirmative charge for the defendant.—Authorities supra. Counsel discuss the refusal of the court to grant a new trial, and cite in support of their contention.—*Southern Ry. v. Lollar*, 135 Ala. 375; *Bir. R. L. & P. Co. v. Owen*, 135 Ala. 154; *Southern Ry. Co. v. Hill*, 39 South. 987.

GIBSON & DAVIS, for appellee.—The 5th count was not subject to the demurrers interposed.—*Southern Ry. Co. v. Jackson*, 133 Ala. 388. The court did not err in refusing the charges requested.—*Going v. A. S. & W. Co.*, 141 Ala. 537. The court did not err in refusing to grant a new trial.—*Cobb v. Malone*, 92 Ala. 630, and cases following this decision.

SAYRE, J.—This case went to the jury on count 5 only of the complaint, the rest having been eliminated without prejudice to the plaintiff in error. Demurrer to that count was properly overruled.—*H. A. & B. R. R. Co. v. Miller*, 120 Ala. 535, 24 South. 955.

Plaintiff in the court below, who was his own sole witness as to the occurrence which resulted in his injury, testified to his case substantially as follows: He was a flagman on a coal train of the defendant which was moving east in the direction of Birmingham. At Warrior Siding the train left the main line to let another train pass. On making the effort to leave the

siding, it was found that the engine was unable to pull the train, whereupon it was detached and moved forward to the next station, leaving the cars upon the siding. Upon the siding there was also standing a work train with its engine near the east end of the switch. Plaintiff was left with the cars of his own train, with instructions to flag the next following train, and tell the engineer to look out for the detached engine at the next station, and to "come in on it." As the next train, consisting of an engine and caboose only, approached, plaintiff stood in the middle of the track of the main line and waved a red flag across the track. The approaching train stopped near the east switch and about 100 feet from where the plaintiff stood; its engine nearly abreast of the engine of the work train. To quote plaintiff's testimony.: "I went on down there (meaning towards the engine), walking in the middle of the track, and as I went on down I turned on the left-hand side, on the engineer's side, and started to get up on the engine, and caught hold of the handhold, and put my foot up, I believe, on the first step, and when I went to make the second step, he suddenly threw the steam on, and suddenly started up, and it threw me down, and it seemed to me like I got hung in the steps, and it dragged me a good piece, and I was knocked senseless. I saw the engineer. He was on the right-hand side of the engine. I was on the left-hand side, facing the engine. The engineer was looking right down the track, right towards me. I passed under him, like, when I went to get on the engine, and I didn't see him when I went to get on the engine. He seemed to be looking down the track the last time I saw him, and I didn't look at him as I started to get on the engine and kind of walked under the engine." The engineer testified without contradiction that he had received orders at the last sta-

tion he passed to pick up the train at Warrior Siding, and that he did not see the plaintiff at all on the occasion of his hurt until after the accident.

It thus appears that there was a conflict in the evidence as to whether the engineer saw plaintiff as he walked down the track towards the engine. But there was no evidence tending to show that the plaintiff was in the act of getting on the engine when it was moved. Nor did the plaintiff speak to the engineer, or give any sign, other than may be gathered from the facts detailed above, that he expected to get on the engine. The evidence showed that the train was moved in response to a signal given by the conductor who was standing upon the ground. A witness for the defendant also testified that a flagman has a right, after flagging an engine to ride on that engine when it stops in obedience to his flag, and it is a part of his duty, when he has instructions to give the engineer, to flag him down and get upon his engine. It may be assumed that the right and duty here spoken of grow out of the employment— were rules of the employer.

The plaintiff's argument for his right to have the case submitted to the decision of the jury must proceed upon the assumption that there was evidence from which the jury might infer that the engineer had notice of his purpose to get upon the engine. The plaintiff had alleged, in the most general terms, as was permissible under the prevailing system of pleading, that the engineer had negligently caused the engine to suddenly start forward. Proof that the engine was caused to suddenly start forward with resultant injury to the plaintiff would fall short of establishing plaintiff's right of recovery. Not every sudden starting of a train is negligent per se. That must depend upon whether there are persons in such position that a sudden start

would probably cause injury, and the duty to know the fact.—*Mobile L. & R. R. Co. v. Bell,* 153 Ala. 90, 45 South. 56. Sudden start and resultant injury proven, the burden was still upon the plaintiff to show that the engineer owed a duty to the plaintiff in the situation in which they were—in other words, to show that the engineer knew, or in the exercise of reasonable care ought to have known, that the plaintiff was in a position 'of peril when the engine was moved. That he did not know the plaintiff's peril is not debatable under the evidence. From what facts, then, was it to be inferred that he was negligent in failing to know?

We are not unmindful of the rule that the general affirmative charge cannot be properly given where conflicting inferences may be drawn by the jury from the evidence. In the case at hand it is supposed that the jury were authorized to infer that the engineer's ignorance of the situation of the plaintiff was negligent from the facts that plaintiff, after signaling the engineer to stop, had walked down the track towards the engine and along by the side of it. Such, we presume, was the theory upon which the trial court submitted the case to the jury. In this we think there was error. The plaintiff was not a member of the crew of the train by the movement of which he was injured. No rule of statute law, contract, nor rule of common employment laid upon the engineer the duty to know that a coemploye engaged in the operation of another train would have occasion in the discharge of his duty to board the engineer's train. He could not know, without being informed, that the plaintiff had a communication for him, or that the plaintiff intended to board his train or engine. The engineer moved his train in response to a signal from the conductor, who stood upon the ground. Railroads are so common a feature of modern development,

and are conducted with such degree of uniformity, that we may safely assume to know in a general way that the conductor is the superior officer, and has general control of the train.—*C. B. & Q. R. R. v. Casey,* 9 Ill. App. 632. Negligence may not, therefore, be affirmed of the fact, without more, that the engineer moved the train without waiting to hear from the plaintiff.

In the last analysis, then, the plaintiff's case depends upon the proposition that his movement towards the engine should have been interpreted by the engineer to mean, not only that the plaintiff had a message for him upon which the movement of the train depended, but that he would get upon the engine to deliver it. Nor was this aspect of the situation modified to plaintiff's advantage by reason of the fact that the flagman had the right to ride upon the engine, or that it was a part of his duty, having instructions to give the engineer, to flag him down and get upon his engine. It may be assumed that the engineer was chargeable with notice of any rule of the common employment which imposed that duty upon the flagman, but it does not appear, except in the way of argument, untenable as we think, from the circumstances already referred to, that the engineer knew that plaintiff had instructions for him in particular, and he was relieved of inquiry as to possible instructions for the train crew in general by the command of his superior to move the train. Nor were the other facts which plaintiff undertook to prove sufficient standing alone or in connection with the rule, to fasten upon the engineer a charge of negligence in failing to interpret the situation as meaning that plaintiff intended to get upon the engine. The other facts were of indifferent significance. Plaintiff's movement towards the engine was no more a movement towards the engine than it was a movement toward's plaintiff's own train, or the work train.

We are of opinion, therefore, that to impose the in-- terpretation of the situation contended for upon the engineer as a matter of duty is was necessary that there should be submitted to the jury something more than the ambiguously balanced circumstances shown in evidence. A much-quoted definition of negligence is that of Alderson, B., in *Blythe v. Birmingham Waterworks Co.*, 11 Ex. 781, as follows: "The omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do." In commenting upon this definition Mr. Pollock has said: "Now a reasonable man can be guided only by a reasonable estimate of probabilities." If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither reject what he can forecast as probable, nor waste his anxiety on events that are barely possible."—Pollock on Torts, 36. Giving the evidence for plaintiff's case, in connection with the undisputed facts shown by the defendant, all the weight it was entitled to receive, it was insufficient to authorize a finding by the jury that the engineer was guilty of negligence in failing to know the peril of plaintiff's position at the moment the train was started. Proof of this particular negligence was an essential part of the plaintiff's case. It results that, on the evidence shown in the record, the defendant should have had the general affirmative charge as requested.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and McCLELLAN, JJ., concur.